UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 2:18-CR-141-PPS ) |
| JAQWAN GOODLOE, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before me on Jaqwan Goodloe's letter requesting that he be released and placed on home confinement due to the COVID-19 pandemic. [DE 51.] Goodloe is a 24 year old male currently incarcerated at the FCI Terre Haute in Indiana. In accordance with my order dated June 8, 2020, the Federal Defender's office reviewed Goodloe's case, but determined they were unable to assist him. [DE 53.] The government filed a response to the motion [DE 55]. Goodloe had until July 1, 2020, to file a reply but to date, no reply was filed.

Let's start by reviewing the procedural background of this case. Goodloe was charged with one count of possession of stolen mail in violation of 18 U.S.C. § 1708 (Count 1), and one count of bank fraud in violation of 18 U.S.C. § 1344 (Count 2). [DE 1.] Goodloe was engaged in a scheme in which he stole U.S. mail to obtain genuine financial documents including checks, altered the checks to change the payee and amount, obtained access to bank accounts to deposit the checks, and deposited the checks to obtain money from FDIC insured banks. [DE 39 at 5.]

His scheme started in Frankfort, Illinois, on October 22, 2018, when he was caught stealing checks from the mailboxes of businesses. [PSR, DE 35, ¶ 6.] The checks in Goodloe's possession at the time of his arrest totaled $18,121.80. *Id.* He was released on bond. *Id.* Then, he moved his scheme to Indiana, where Goodloe stole checks along Highway 41 in Schererville, IN, altered them, and deposited the stolen, altered checks. [PSR ¶ 7.] Goodloe was caught again on November 3, 2019, after he presented a fraudulent check for deposit at an FDIC-insured bank in Griffith, Indiana. *Id.* When Goodloe was arrested, he had 10 stolen checks in his possession. [*Id.* ¶ 9.] He was released pending a full investigation by the U.S. Postal Inspection Service, which resulted in the charges in this case. Undeterred, after being released but before being charged, Goodloe moved his scheme back to Illinois. Approximately one week after his release in Indiana, he stole checks in Lincolnshire, Illinois. [*Id.* ¶ 11.] In short, Goodloe was unrelenting in the execution of his scheme; he simply moved his operation from Illinois, to Indiana, and then back again to Illinois.

When he was finally arrested for good in January 2019, Goodloe was driving a stolen car, failed to stop at a stop sign, provided his brother's name to the police, possessed a fake ID, possessed several checks and a piece of mail with other names on them, and was found to have 49 counterfeit $20 bills stuffed down the front of his pants. [*Id.* ¶ 41.] Overall, 30 businesses and individuals were affected, and the total loss associated with the scheme was $48,300.51. [*Id.* ¶ 14.]

There's more: in August 2019, a revocation hearing was held in this case because

2

Goodloe had failed to attend counseling sessions mandated by probation and had also tested positive for marijuana. Judge Martin admonished Goodloe, and the government agreed to give him another chance at compliance. [DE 25.] That same day, Goodloe changed his plea to guilty. Goodloe pleaded guilty to both counts of the indictment without the benefit of a plea agreement on August 1, 2019. [DE 26.] On October 2, 2019, a second revocation hearing was held, this time because Goodloe had been placed on a color system for drug testing, but failed to comply. [DE 33.] Goodloe's bond was revoked this time. *Id.*

On November 26, 2019, I sentenced Goodloe to 24 months imprisonment followed by 2 years of supervised release. [DE 43.] Goodloe had a criminal history category of III, including a battery and a conviction for possession of marijuana. [PSR ¶ 34, 39.] Goodloe has served only 8 months of his 24 month sentence, with two of those months coming before his sentencing because his bond was revoked.

In support of his motion, Goodloe argues that he has a history of bronchitis, he lacks write ups while in prison, and is concerned over missing out on certain parts of life including filing for custody of his daughter and attending a funeral. [DE 51.] The instant request is for compassionate release under the First Step Act. Goodloe bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

3

Before I get into the merits of Goodloe's claim, I need to first look into the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the defendant after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Goodloe first requested relief from the warden of FCI Terre Haute, and his request was denied on May 21, 2020. Therefore, Goodloe has satisfied the exhaustion requirement.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford

4

adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Before I address whether "extraordinary and compelling reasons" warrant a reduction in Goodloe's sentence, I will look to the factors set forth in section 3553(a). Goodloe was arrested multiple times during the same scheme that he refused to give up. He financially injured numerous companies and people, and even when out on bond, he refused to abide by the law. Following two revocation hearings, his bond was finally revoked. While I have no way of actually knowing, I believe that Goodloe could still pose a danger to the public, as he has not exhibited any change in his behavior. He has only served about 8 months out of his 24 month sentence. I believe he still needs additional time in prison to be rehabilitated and for him to learn to respect the law. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not counsel in favor of release in this case.

     Nor are there "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A). I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13. This would allow me to reduce Goodloe's sentence if I determined extraordinary and compelling reasons warrant the reduction, Goodloe is not a danger to the safety of any person or the community, and the reduction is consistent with the

5

policy statement. USSG § 1B1.13. The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include that the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition; the death or incapacitation of the caregiver of the defendant's minor child or minor children or upon the incapacitation of the defendant's spouse/registered partner when the defendant would be the only caregiver for that spouse/registered partner; or other reasons as determined by the Director of the BOP. USSG § 1B1.13 cmt. n. 1.

In this case, Goodloe's health conditions do not qualify as extraordinary or compelling reasons to release him to home confinement. Goodloe claims he has a history of bronchitis. [DE 51.] This is what we can glean from his records: during his probation interview in August 2019, Goodloe stated he had been treated for asthma in the past and controlled it with an inhaler, but that he had not used an inhaler in a year because he felt he did not need it. [PSR ¶ 52.] There is a note in the PSR that according to defense counsel, Goodloe has bronchitis, not asthma. *Id.* According to his BOP medical records, on February 13, 2020, Goodloe told the medical staff that he did not have asthma or other respiratory disorders, but he had a history of bronchitis. [DE 57 at 11.] Goodloe said he had not used an inhaler in nine months. *Id.* On April 9, 2020, Goodloe told the medical staff he was supposed to be treated with an inhaler, and an appointment was made with a Physician's Assistant. [*Id.* at 10.] On May 13, 2020, he did not appear for a medical appointment to address his request for an inhaler. [*Id.* at 9.]

6

On June 8, 2020, Goodloe was treated for a cut and the physician noted his "respirations easy and even." [*Id.* at 6.] On June 17, 2020, Goodloe submitted another request for an inhaler. [*Id.* at 5.] He was seen by a doctor on June 22, 2020, no respiratory distress was observed, and his oxygen saturation was 100%. [*Id.* at 2.] Goodloe stated that nursing staff gave him an inhaler, and his symptoms resolved. *Id.* He also stated that he was diagnosed with asthma in 2014, did not have a history of childhood asthma, and only got symptoms about once a month. *Id.* The doctor prescribed an inhaler, and Goodloe is enrolled in the chronic care clinic at the prison now. [*Id.* at 4.]

Goodloe does not allege that he is receiving inadequate care or that his condition is not under control. Thus, it seems that the BOP has been able to manage and treat Goodloe's asthma, or history of bronchitis (whatever term you give to his ailments) to date. There are no records of any severe asthma attacks or severe respiratory distress in Goodloe's medical records. There is nothing about Goodloe's asthma or history of bronchitis in general which would constitute an extraordinary or compelling reason to reduce Goodloe's sentence. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704785, at *2-3 *(*E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "[t]o be faithful to the statutory language requiring extraordinary and compelling reasons, it is not enough that Defendant suffers from . . .

7

chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event.").

The real question is whether Goodloe's health conditions, in addition to the COVID-19 pandemic, justify compassionate release. Even considering Goodloe's asthma, or history of bronchitis, in the midst of the COVID-19 pandemic, he still does not meet the extraordinary and compelling standard in this case. According to the Centers for Disease Control and Prevention (CDC), people with certain underlying medical conditions, including moderate to severe asthma, "might be at an increased risk for severe illness from COVID-19." Https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed July 8, 2020). As the court noted in *United States v. Polnitz*, No. 17-cv-201-pp, 2020 WL 3129643, at *4 (E.D. Wis. June 12, 2020), the American Academy of Allergy Asthma & Immunology states that "currently there is no evidence of increased infection rates in those with asthma," and that "although the Centers for Disease Control and Prevention states that patients with moderate-severe asthma could be at greater risk for more severe disease, there is no published data to support this determination at this time." (Citing https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma.)

In this case, Goodloe is young and overall healthy, and seems to need an inhaler very infrequently. I don't think his condition would be considered "moderate to severe" asthma. But even if it was, according to the government's submission on June 23, 2020, out of the 1,234 inmates at FCI Terre Haute, it only has nine cases of COVID-19, which is an infection rate of less than 1%. [DE 55 at 5.] I realize that these numbers change constantly but I must consider the evidence presently before me. And there simply is not much of a risk at FCI Terre Haute at the present time. As I stated in another case denying a motion for compassionate release filed by a 50 year-old man who reported a history of respiratory ailments, including bronchitis, asthma, pneumonia, and used an inhaler in the past but was housed in a BOP facility with no reported cases of COVID-19: "[h]is fears of possibly contracting the virus, and of possibly experiencing severe complications if he does, are simply not 'extraordinary and compelling' reasons to support his release at this point in time . . . ." *United States v. Culver*, 2:16-cr-89-PPS-APR, DE #19 at 3 (N.D. Ind.); *see also United States v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020) (denying motion for compassionate release noting defendant's asthma is controlled with medication); *United States v. Cheek*, 2:18-CR-91-PPS, 2020 WL 349885, at *3 (N.D. Ind. June 29, 2020) (denying motion for compassionate release where asthma seemed largely controlled by medication).

Similarly, I do not think Goodloe's concern about getting COVID-19 in prison justifies compassionate release in this case. The Third Circuit explained that, "the mere

9

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."  *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

      While I am certainly sympathetic with Goodloe's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, Goodloe has not demonstrated that his risk is significantly higher than if he were to be released, or that the facility is unequipped to provide appropriate medical treatment if he were to become sick.  He has therefore not shown that release is necessary for the compelling reason of protecting his life.  Goodloe requests home confinement [DE 51], but he gives no further details and there is no indication that he would be safer living in

10

society than he is in prison.

Finally, Goodloe states he has not been in any altercations in prison or received any write-ups, plus he could not start the custody battle for his daughter, he lost a cousin whose funeral he could not attend, and his grandfather is on his deathbed. [DE 51.] While it is certainly commendable that Goodloe has good behavior in prison, this does not justify compassionate release. *See United States v. Wieber*, No. 3:14-cr-74-TBR, 2020 WL 1492907, at *3 (W.D. Ky. Mar. 27, 2020) (collecting cases for proposition that compassionate release cannot be based on rehabilitation alone); *United States v. Washington*, No. 5:13-020-DCR, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (defendant's claim that he "has an ideal prison record and is the prototype of a successfully rehabilitated individual" does not present an extraordinary circumstance). Similarly, although I am sympathetic towards Goodloe's family situation and the fact he is missing important family events, that also does not justify compassionate release.

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day. At this point, based upon all the facts before me, I do not think that Goodloe should be released for home confinement. If factual developments warrant a reconsideration, Goodloe is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Goodloe's letter requesting that he be released and placed on home confinement due to the COVID-19 pandemic [DE 51] is DENIED. Goodloe has not shown the factors under section 3553(a) warrant

release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: July 10, 2020.

                                           /s/   Philip P. Simon
                                          PHILIP P. SIMON, JUDGE
                                          UNITED STATES DISTRICT COURT